Good morning, Your Honors, and may it please the Court, I'm Shea McPhee from the Louisiana Department of Justice. Unlike the last case, this case is best described as a time computation dispute. Mr. Hicks contends that while he was incarcerated in Louisiana, he was unlawfully deprived of credit for the time he spent incarcerated in Arkansas, and losing that credit allegedly caused Hicks to be over-detained for 60 days. After he was released, Mr. Hicks sued state prison officials seeking damages under Section 1983 for the time he spent over-detained. But Hicks' problem is that he lacks a cause of action. Under binding precedent, damages claims stemming from time computation disputes, even those resulting in over-detention, are heck barred. It's undisputed that Hicks failed to satisfy the favorable termination rule of heck, and so the District Court erred by failing to dismiss all of Mr. Hicks' claims against my clients. The District Court also erred by failing to grant qualified immunity to Tracey D. Benedetto and Sally Greider. The last time that this case was before this Court, it denied qualified immunity to Defendant Terry Lawson because Mr. Hicks alleged that Lawson retaliated against Hicks and intentionally — excuse me — intentionally deprived him of credit. But nothing in the complaint suggests that either D. Benedetto or Greider knew that Terry Lawson was intentionally depriving Hicks of his credit. Instead, Hicks' second amended complaint seeks to hold them liable as supervisors for not catching the error that Lawson committed. But supervisors are entitled to deliberate indifference standard of causation, and again, under deliberate indifference, they had to have constructive evidence that Lawson was intentionally depriving Mr. Hicks of his time credit. And again, there's nothing in the complaint that suggests that they knew that — that he was intentionally depriving them of that credit. And in fact, that was the exact reason why this Court dismissed Secretary LeBlanc and gave him qualified immunity in this very last appeal. Secretary LeBlanc has already been entitled to qualified immunity, and the Court should do the same here, again, for Tracy D. Benedetto and Sally Greider. I'd like to start with the heck argument, if I can. And I think it's important to sort of understand where the heck bar came from and why it exists. At common law, I'm sure the Court is familiar, there's a cause of action for malicious prosecution. But one of the elements underlying — or one of the elements that you have to plead for malicious prosecution is that the underlying criminal termination resulted in a favorable result for the accused, excuse me. And that's a sensible rule. Otherwise, you have a trial within a trial. You're forced — you have to figure out whether or not he was actually guilty. So if you're going to bring a malicious prosecution claim, you have to, as an initial matter, allege that, oh, I won in the underlying proceedings. And in a string of cases, the Supreme Court in Proviso v. Rodriguez, Heck v. Humphrey, Edwards v. Ballysock, and Muhammad v. Close and Wilkinson v. Dotson, the Supreme Court said that that same favorable termination rule applies to any case that probably sounds inhedious. And it doesn't limit — those cases do not limit that favorable termination rule only to cases that attack the validity of the underlying sentence or conviction. Instead, they adopt a much broader standard that anything that sounds inhedious is properly — you have to get the favorable termination rule. And again, that makes sense. Otherwise, we have to figure out whether or not Mr. Hicks, for example, actually was over-detained. That shouldn't — that's not the rule. The Heck bar applies so that we don't have to go through that process. We don't have to have the trial within the trial. We don't have to — now, Mr. Hicks thinks that that shouldn't matter here because he thinks it's so clear that he was over-detained. But again, Heck has never been limited in that way. It applies any time that a case properly sounds inhedious. And here he actually sought habeas relief. There could be no question that his claims — that the release that he would have sought sounds inhedious. Release is the quintessential habeas remedy. So I think, of course, in Crittenden, the Court didn't address the Heck argument because it hadn't been raised by the parties. But I do think that Judge Oldham was right on the merits of the thing. And I think that's especially clear here because this is a time  JUSTICE KENNEDY What do you do with the Supreme Court's decision to say that it has to be an attack upon the sentence itself? MR. RIEFFEL Well, I would point the Court to its discussion in Colvin v. LeBlanc, where it actually distinguished between Wolf v. McDonnell and Edwards v. Balasag. It made this exact — JUSTICE KENNEDY I'm quoting Justice Scalia's efforts to deal with the perennial problem of the pathways to the Supreme Court itself in these reviews in 1983 suits. And they're then trying to put 1983 into its proper perspective. And the marker that the Court gave us was that — was the question of the dividing line was whether the original sentence was implicated or not. MR. RIEFFEL Well, I think that the cases haven't been so narrowly limited. There is case law suggesting what you're talking about. I do know what you're talking about. JUSTICE KENNEDY But in those cases, it's usually prisoner litigation where the prisoner is bringing up some sort of claim. Again, I think Wolf v. McDonnell is a good example. And this Court explained the difference, saying that the Court held that a prisoner could challenge the validity of prison procedures that resulted in a loss of good time credits because he sued prison officials for using the wrong procedures, not for reaching the wrong result. So it didn't affect the validity of the sentence. But as opposed to Edwards v. Ballysock, which would have necessarily resulted in his release. And again, I think that this — even if the Court is of that view, and even if the Court thinks that Crittenton actually decided this, which I don't, I think that under the rule of orderliness, Randall v. Johnson just controls here, Your Honor. Randall v. Johnson actually addressed the exact same issue. In that case, Tommy Randall argues that he was incarcerated for a year pursuant to a warrant from the Texas Board of Pardons and Paroles, but he wasn't given credit for a year. He didn't get a year's worth of credit. And so he claims after his release, just like Mr. Hicks, he claims that he was entitled for damages for that year. He sought $1,000 of damages for every day. But this Court had no trouble concluding that his claim was heck barred. So is it — tell me if I'm misconstruing. So is it the state of Louisiana's conception of heck that the state can continue to detain prisoners for months beyond the expiration of their duly imposed sentence without consequence under the Federal Constitution? No, absolutely not. Absolutely not, Your Honor. And I want to be very clear here. Heck is not a categorical bar in the sense that all you have to do is apply the favorable termination rule. It's just like we talked about a common law for malicious prosecution. Of course, you can bring a malicious prosecution claim, but there's just a precondition. You have to show that you're under — that you won below. And heck is the exact same. All we're asking is for the Court to make sure that, as the Court heard, there are potentially hundreds and hundreds of these sorts of cases. All we're asking is that prisoners go through the proper procedures. And that is the rule and rationale of heck. Once they go through the proper procedures — Proper procedures meaning — The favorable termination. State habeas or what? State habeas. Yeah. There is a statute — here he actually tried to get state habeas, but he didn't go through the proper state procedures. Louisiana revised statute section 15, 1177. It's the Corrections Administrative Remedy Procedure called CARP. It's sort of a — What's the average timeline on kind of state habeas practice? I'm not — Somebody says, hey, I've been over-detained for a year. Let me invoke state habeas. And how long is that going to take? I'm not precisely familiar enough. I can't answer your question. But I will say that in — again, pointing back to Randall, that this Court expressly acknowledged — and actually the Supreme Court, in a case called — excuse me, it's Spencer v. Kemna. There were actually five votes on that — in that case where the justices said — but they were all in concurrences. They never actually held this. But they said, wow, this could be unfair. This could be really unfair to people who are released, and they just didn't — they weren't able to go through the — they weren't able to satisfy the favorable termination rule. They weren't able to go get state habeas. What if somebody — so they bring a state habeas action, and the state light bulb goes off, state says, oh, our bad, you're right, and they get released. So there's no — I mean — Then they can bring a damages suit. Absolutely. That is the rule and rationale of HEC. And we're not arguing otherwise. We're just saying that they need to walk through the proper procedures before they can be entitled to a damages claim on the back end. That's always been the rule of HEC. This Court has applied it numerous times, even in over-detention cases stemming from time computation disputes. And again, I point the Court to Randall v. Johnson. And again, in Randall v. Johnson, this Court noted, wow, the Supreme Court has suggested that this might be unfair, but there's nothing we can do about it, that the Supreme Court never officially overruled — I think the word that Randall used is — it never relaxed the HEC favorable termination requirement, and we're stuck with it. Why is it incorrect to describe what's happening this way, that Hicks is not calling into question his conviction or his sentence? He is calling into question that his detention surpassed his sentence. Again, I think it goes to the scope of the HEC bar, and it applies to any claim that goes into central habeas remedy. It's the only remedy you can get under habeas statute. If you drop out of your analysis, it's the legality of the sentence itself. That's the index. And you would just wipe out, by that analysis, any liability, any responsibility when you have habeas. But the point has been, it comes from the Supreme Court itself, that the index is whether or not there's an attack upon the actual legality of the sentence itself. If that's true, then you simply cannot have habeas, because the whole point of this was Justice Scalia's attempting, and it's been followed since then, of providing the proper roles for 1983 and for habeas and HEC relief itself, and dividing up, because the concern was that 1983 could reach much beyond. So that's my concern with your argument, is that you drop out the question of, is there any justifice to the sentence? If HEC barred a release, they could have released. But only if HEC barred a release, they could have released. I mean, that's the whole point. But I suggest to you that the directive from the high court is the limit is the legality of the original sentence itself. That's where I am, but that's wrong. I understand, Your Honor. I would just — I think it's wrong, too, I guess. I would just simply direct the Court's attention to Wilkinson v. Dotson, which I think — I'm happy that the Court says, and this is Justice Breyer, says, throughout the legal journey from Preiser to Ballysock, the Court has focused on the need to ensure that state prisoners use only habeas or similar state remedies when they seek to invalidate the duration of their confinement. Duration of their confinement, not the legality of the sentence itself. Right. Duration doesn't — Exactly. No, I think you're exactly right. He didn't say the sentence or the validity of the conviction. He said the duration of the confinement. It results in speedier release. Anything that results in speedier release is necessarily heck-barred. And it's hard to imagine — again, he sought habeas relief here. No 1983 suit would rely on period. No, all they have to do is just — All these cases are just about — it kept me too long. There are many cases where people actually did seek habeas relief, and those people could then, of course, bring a damages action against the state. There have been cases where people satisfied the termination rule of heck. Hicks didn't, and that's the case before the Court. But there are cases where people have satisfied it, where they did go get habeas relief. And then, of course, heck is no bar. I didn't have much time to — I see I'm running out of time. The qualified immunity — I just want to say again that they are — Tracy D. Benedetto and Sally Greider are supervisors. I'm not sure I follow your argument at all. But you're saying then that to seek a release, you go to habeas, but then file your 1983 suit. Correct. Yeah, exactly. So that once you're released, you don't need habeas. But once they release you, you don't need habeas to be released. Can you then file your 1983 suit? No. And Randall — Randall v. Johnson — So that goes back to my colleague's question. So then there is simply no liability for keeping people until the 10 years past your sentence. In that instance, yes. But, of course, also the great — But they finally say, oh, well, sorry guys, good luck. And, whoops, you didn't get habeas. That puts the whole system upside down. So then there's no liability, no responsibility at ever. Because you've got to get habeas. I would just direct the Court again to Randall v. Johnson, which directly addressed that. I think we have the panelists back. I understand. Thank you. You may just have to disagree. Good morning, Your Honors. May it please the Court. William Most on behalf of Plaintiff Ellis Ray Hicks. This case is about two Department of Corrections officials who were supervisors, but it's their direct participation, their direct acts that prevented Plaintiff Ellis Ray Hicks timely release according to his court-ordered sentence. That's what we are alleging that they are liable for. I'll jump right into the Heck issue. My colleague suggested that Heck is not limited to cases that would necessarily demonstrate the invalidity of a criminal conviction. That is wrong. Heck, at page 487, said, if the District Court determines that the plaintiff's actions, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed. Well, Counselor, I think there's much more to it than that. I'm looking at Mohammed from much more recently. There, there was a problem of misconduct charge, seven days of confinement resulting from that, and the 1983 suit was brought for that, that seven days of confinement in prison, isolated. His 1983 suit challenging this action cannot be construed as seeking a judgment at odds with his conviction, which is what you said is the limit of Heck, or with the State's calculation of time to be served in accordance with the underlying sentence. So Mohammed at least says it's not just a sentence, it's the calculation of time to be served in a sentence. What do you say to that? Yeah, I would say that when a prisoner is trying to use an action to get out sooner, that's a habeas thing, right? When they are seeking damages... I'm not sure what I just agreed to. Give me that construct again. When a prisoner is bringing an action to try and get out of prison sooner, that is within the scope of habeas. But what Prysor said is, however, if a State prisoner is seeking damages, he is attacking something other than the fact or length of his confinement. There is no overlap between the remedies available in habeas, which is release and only release, and the remedies sought here, which is damages. And so, because nothing that will happen in the future of this case will in any way suggest that Mr. Hicks' conviction was wrong, inappropriate, unconstitutional, anything like that, Mr. Hicks acknowledges in his complaint that what his sentence was is not attacking it, a trial won't attack it,  And so the directive from the Supreme Court in Heck is that this action should be allowed to proceed. And my colleague's suggestion that all he needed to do was follow the proper procedures, my colleague is referring to the part of Heck that says the Heck bar can be satisfied if the underlying conviction is reversed in a State court proceeding on habeas. But of course, that's not what Mr. Hicks is trying to do. He's not trying to... excuse me, reverse his conviction. There's no process for him to follow with habeas because he's not trying to do that. And I will note also that... Yes, Lobson argues that if it affects the duration of the sentence, that you've got to go reverse and use habeas. And the consequence of that would simply be that you keep a guy three years too long and you say, oops, and whatever, and release you. Well, you have no 1983 suit because you didn't get out by habeas. And so when they determine... So you simply insulate themselves, this entire system, from any kind of liability with that kind of reading. That is, somehow or another, there is a prerequisite to habeas to be released. And the whole question of Heck, the force of Heck, and the origins of Heck is to define the respective roles of 1983 and habeas. That's the whole burden of Heck. Exactly right. And the practical reality is, when prisoners file habeas petitions, the DOC then frequently wakes up and releases that person, and then the habeas petition is, of course, mooted because the person is released. That's what happened in Crittenden. There were habeas petitions filed for the plaintiffs there. They were released shortly after the habeas petitions were filed. Of course, the habeas was then mooted. But just because the court didn't rule on the habeas petition doesn't mean that then there's... forbidden from having damages actions. My colleague suggested that this court didn't address Heck in Crittenden. That's incorrect. The Fifth Circuit, this court, Your Honor, wrote in Crittenden, Heck does not bar this suit. The Heck defense is not implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence. It was a published opinion, the mandate issued earlier this year. The rule of orderliness binds future panels of this court to recognize the holding, the prior holding of this court, that Heck is not a bar to an overdetention claim because an overdetention claim does not challenge the validity of the underlying conviction. And I'll note that the law does not place a burden on the inmate to do the work of getting himself or herself released. It doesn't challenge the duration of the sentence either because in the sentence... He served his sentence. That's his whole point. Exactly right. The Heck is often applied when someone is challenging the duration of their sentence. For example, in Colvin. Colvin thought he should be entitled to credit for time he spent in federal incarceration. No court had awarded him that credit but he wanted to shorten the duration of his sentence by getting that credit. But here we've got a situation where a court awarded Mr. Heck's credit for time he spent in Arkansas and it's the follow-through of implementing that sentence that didn't happen. So there's no challenge to Mr. Heck's sentence coming from our side and so Heck could not possibly bar his claims. And the law places the duty on the state to effect someone's timely release. There are some constitutional duties which are prohibitory, right? Don't use excessive force. And there are some constitutional duties which are mandatory and the law places a mandatory duty on jailors to take the steps to ensure someone's timely release. We saw that in Porter, for example. A jailor has a duty to ensure that inmates are timely released from prison. And Ms. DiBenedetto and Ms. Greider did not fulfill that duty. Neither of them is being sued for a supervisory claim. In fact, if you look at the complaint that's record page 1063 you'll see neither of them is actually named in the supervisory claim. What these two persons are being sued for is their direct participation. Ms. Greider did something that is, to my mind, quite shocking which is, even after everyone accepted that Mr. Heck should be released that he was being over-detained she added five more days to the time that he would serve. She set his release date five days into the future. She did not say, we're going to process him as fast as possible and get him out. She did not say, we're going to hold him for as long as it takes to process him. She added five days and then they didn't start the processing until day four of her five days that she added on. And that is, we argue, under this court's holding in Hicks in this prior case, in Crittenden that shows deliberate indifference to someone's right to be free. When you know someone should be free and you don't let them free and you just add five more days that is, I think, one of the clearest forms of deliberate indifference that we've seen in any of these pieces of litigation of which there are many. Ms. DiBenedetto she saw, the complaint alleges that she saw that Mr. Hicks had been awarded credit for the time spent in Arkansas saw that he was not getting that credit in their time computation and didn't fix it. And so she falls within what this court said should be a denial of qualified immunity. In Hicks, the first Hicks, this court held that a reasonable DPSC employee should have known to credit time served when calculating an inmate's release date where the court ordered such credit to be considered. And so Ms. DiBenedetto, and the same allegations are true for Ms. Greider they both are similarly situated to Mr. Lawson in this court's prior ruling, not Mr. LeBlanc and so, of course, like Mr. Lawson they should have qualified immunity denied to them. But my colleagues suggested that it was the intentionality of Mr. Lawson's actions, the retaliatory nature of them that led this court to deny him qualified immunity that is partly true. That's true as for the First Amendment claim for Mr. Lawson but this court also recognized that it was the failure to take the steps to release this person on time that led to denial of qualified immunity on the Fourteenth Amendment claim which is the one that applies to the two appellants here. And so I'll note that this court in Douthat, an older case citing Wuerl said that where a plaintiff alleges that he was imprisoned without valid authority the court ruled that it would hold the jailer to a high standard of reasonableness since he exercises no discretion and is under relatively little time pressure. This is not a situation where a law enforcement officer has to make a split-second decision about firing a gun. This is a situation where they had most of a year prior to Mr. Hicks' proper release date to figure this stuff out and didn't. And I think that there's been some impugning of maybe the continued vitality of some of those older cases like Wuerl and Kern but I'll note that this court has recently affirmed the vitality of those older cases in Harris v. Clay County which was a published decision by this court of last year. The court cited Wuerl and for the proposition that as we said long ago of another sheriff's defense to a prolonged detention claim that ignorance of the court's order excused the sheriff from liability if that were the law then 9 months could easily be 9 years and those 9 years, 99 years and still as a matter of law no redress would follow. And the court rejected that in the 1960s and then has continually rejected that sort of thinking in the years subsequent and then last year affirmed that that is still the law of this circuit. And so because Heck does not apply because this court in a published holding held that in over detention cases Heck does not apply and because qualified immunity should be denied per this court's ruling in Crittenden, Hicks and the other cases we ask that this court affirm the trial court decision below if there's no other questions I'll leave it there. Thank you. Thank you, your honor. Just a few quick points on rebuttal I want to start, Judge Southwick I think you're exactly right that Mohammed is exactly on point I asked a question, I wasn't making an apology I do agree, my answer to your question is that yes, Mohammed is exactly on point and it controls here I also want to address opposing counsel's point about pre-eiser and how it distinguishes between damages versus habeas relief. That's true, those are separate things. In pre-eiser, a person brought both they both sought release and damages and so the court distinguished between the two and said that to prevent habeas from becoming a dead letter we're going to say that if you want release, you've got to go through habeas but then in Heck, they borrowed from the common law to apply the bar that says if you want to seek damages, though you have to have satisfied the favorable term so pre-eiser was decided for Heck and Heck added the bar after that, so I just want to be clear on that point. I also want to point to Heck's holding because opposing counsel did Heck said, we hold that in order to recover damages for allegedly unconstitutional conviction or imprisonment it did not limit it to an invalid sentence, it expressly said imprisonment, which of course follows from the fact that the whole point is to preserve the habeas statute and then it went on to explain what the favorable termination rule was I also want to say, I don't think that Crittenton decided the issue, your opinion in Crittenton praised the idea of not deciding issues that aren't raised by the parties, so I don't think it was controlling and I think subsequent panels which have considered these issues all of them have said, we declined to address Heck just because none of those panels said we can't address Heck because Crittenton foreclosed the issue but I do want to point out that I think that these time computation disputes again are distinguishable even from the sentences that were at issue in Crittenton Again, I do just briefly want to address the five days of Sally Grider the five day hold that the opposing counsel brought up again, pointing to Crittenton, that opinion I think correctly acknowledged that there is no clearly established law on what is a reasonable release sometimes jailors are entitled a reasonable delay to ensure that the inmate hasn't murdered his inmate or doesn't have a companion in his cell or doesn't have an arrest warrant waiting in some other parish, there is a reasonable delay and that's what, in light of Sally Grider when she discovered, oh this person is entitled to immediate release, she wanted to check and make sure that there were none of those outstanding warrants, and so that's what those five days were and there's nothing that says that that is a constitutional violation That's not in the record, is it? That's the reason for the five days, is that in the record? We're here on a motion to dismiss, right? So we're looking only at the plausible allegations, so I think that's not part of what we consider That's fair, Your Honor. He didn't allege in his complaint that it was an administrative delay but five days is a reasonable amount of time including a weekend to ensure, but even if you disagree and say that that isn't a reasonable amount of time, there's no clearly established law that says holding an inmate for five days is too much. There's the cases that opposing counsel cited that suggest 30 days is too much, but nothing suggests five days Again, the cases that opposing counsel cited, Worrell and Jones, those cases established a strict liability standard for jailers That is no longer the law The Supreme Court in Daniels v. Williams said that there is no such thing as a negligence claim for 14th Amendment due process violations You can't negligently deprive somebody of their due process rights So I do think that those cases that opposing counsel are relying on are defunct I would ask the Court to dismiss all claims against my clients under Heck v. Humphrey or grant qualified immunity to Tracy Dee to Dee Benedetto and Greider All right, counsel. Thanks to all counsel who are here for your assistance on these cases That is the end of today's session